# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

GREGORY BURNELL GOODSON, )
                         )
    Plaintiff,           )
                         )
v.                       )
                         )        CV419-185
                         )
BROOKE BENTON, et al.,   )
                         )
    Defendants.          )

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Gregory Goodson brings this 42 U.S.C. § 1983 action requesting transfer to another prison to complete his RSAT program. Doc. 1. The Court granted plaintiff's request to pursue his case *in forma pauperis* (IFP), doc. 3, and he returned the necessary forms. Docs. 4 & 5. The Court now screens the Complaint pursuant to 28 U.S.C. § 1915A, which requires the immediate dismissal of any *pro se* complaint that fails to state at least one actionable claim against a governmental entity or official.

Plaintiff alleges that he was transferred to Coastal State Prison to complete a Residential Substance Abuse Treatment. Doc. 1 at 5. He alleges that this transfer placed him in a dangerous environment. *Id.* He further

alleges that the program at CSP is not conducive to his recovery and will cause him great emotional and physical harm. *Id.* He wishes to be transferred to a new prison because of the hostile, unsafe, and racist gang activity at CSP. *Id.* at 6.

As a threshold matter, Plaintiff admits that he has not yet fully exhausted his administrative remedies. Doc. 1 at 4; doc. 7. Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Normal pleading rules still apply to prisoner suits, however. *Id.* at 214-15. When a prisoner's failure to exhaust is apparent on the face of the complaint, making it clear that the prisoner cannot state a claim for relief, dismissal is warranted under 28 U.S.C. § 1915A. *Id.* at 214-15. Plaintiff filed a grievance on July 8, 2019, but had not received any response by July 29, 2019 (when he filed the Complaint). Doc. 1 at 4. In other words, he had not received a denial or other resolution to his grievance, much less appealed that denial to the highest level possible according to the prison's administrative procedures. *Id.* Because Plaintiff has not exhausted his admittedly available administrative remedies prior to filing suit, his claims must be dismissed without prejudice. *See, e.g., Gill v.*

2

*Deal*, 2018 WL 3650269 at *3 (S.D. Ga. Aug. 1, 2018); *Sewell v. Ramsey*, 2007 WL 201269 at *2 (S.D. Ga. Jan. 24, 2007).[1]

Even if plaintiff had exhausted his administrative remedies, there is no indication here that he has any recoverable claim.  Generally, he claims that the general population is dangerous and that it is a destructive environment. However, he does not claim that he has been injured, at most he alleges that he *might* suffer from some kind of prospective injury *once he is released*. Assuming plaintiff is attempting to bring a failure to protect claim, prison officials have a duty to protect prisoners from assaults by other prisoners. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  "A prison official violates the Eighth Amendment when he actually (subjectively) knows that an inmate is facing substantial risk of serious harm, yet disregards that risk by failing to respond to it in an (objectively) reasonable manner."  *Rodriguez v. Sec'y for the Dept. of Corrs.*, 508 F.3d 611, 617 (11th Cir. 2007).

The duty to protect, however, must be understood in its proper context: "Prisons are dangerous places because they are filled with people society has

---

[1]    The case cannot be stayed either, pending exhaustion, because the Prisoner Litigation Reform Act requires an inmate to exhaust his administrative remedies before filing his complaint in federal court. *See Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000); ("when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit"); *see also Harris v. Garner*, 190 F.3d 1279, 1285-86 (11th Cir. 1999).

3

already deemed too dangerous to live amongst law abiding persons. Prisoners will always be at some risk of harm simply by being surrounded by these people." *Green v. Hooks*, 2017 WL 1078646 at *10 (S.D. Ga. Mar. 21, 2017). In order to trigger a failure-to-protect claim, a plaintiff must allege that the threat rose above the background danger. *See Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("[B]efore Defendants' awareness arises to a sufficient level of culpability, there must be *much more* than mere awareness of [an inmate's] generally problematic nature." (emphasis added)). Plaintiff here does not even suggest that he might be harmed by some specific person. Rather he generally alleges that CSP is "dangerous" and that he should be moved. This is simply not enough.

Likewise, Plaintiff cannot tack on a denial of medical care claim. The denial of medical care offends the Eighth Amendment when a government official displays "deliberate indifference to the serious medical needs of prisoners…." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This involves an "objective component" demonstrating the existence of a serious medical condition and a "subjective component" showing that prison officials acted with deliberate indifference toward that condition. *Id.*

To satisfy the objective component, a plaintiff must set forth evidence of a medical need that is sufficiently serious that, if left unattended, it would

"pos[e] a substantial risk of serious harm." *Id.* (quoting *Taylor v.* Adams,

221 F.3d 1254, 1258 (11th Cir. 2000)).   Serious injuries are both those

"diagnosed by a physician as mandating treatment" and those that are "so

obvious that even a lay person would easily recognize the necessity for a

doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187

(11th Cir. 1994) (internal citation and quotation marks omitted), overruled

in part on other grounds by *Hope v. Pelzer*, 536 U.S. 730 (2002).   They also

include those medical needs that would be worsened by a delay in

treatment. *Mann v. Taser Int'l., Inc.*, 588 F. 3d 1291, 1307 (11th Cir. 2009).

Here, plaintiff never alleges that he is not able to participate in the program,

in fact his complaint would suggest he is *currently* participating, merely

that the environment in which the program exists may be dangerous.  Thus,

plaintiff *is* receiving treatment and no denial of medical claim exists.[2]

Accordingly, Plaintiff's Complaint should be **DISMISSED without**

**prejudice**.  Meanwhile, it is time for plaintiff to pay his filing fee.  His PLRA

---

[2]      Though a *pro se* prisoner normally should be given an opportunity to amend his complaint at least once, *see, e.g., Johnson v. Boyd*, 568 F. App'x 719, 724 (11th Cir. 2014); *Duff v. Steub*, 378 F. App'x 868, 872 (11th Cir. 2010), "a district court need not allow amendment if the amended complaint would still be subject to dismissal." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015).  That's the case here.  Of course, if plaintiff were to suffer from some kind of injury, or be otherwise deprived of treatment, he could always file an amended complaint within the fourteen days he has to object to this R&R.

paperwork reflects $0 in average monthly deposits and balances over the six-month period prior to the date of his Prison Account Statement.  Doc. 4.  He therefore owes no initial partial filing fee.  *See* 28 U.S.C. § 1915(b) (1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  Plaintiff's custodian (or designee) shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.[3]

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

---

[3]    The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required.  In the event he is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 16th day of January, 2020.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA